**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| IN RE: | MARK A. IEZZI, | : | Chapter 13 |
| | | : | |
| | Debtor. | : | Bky. No. 13-18103 ELF |
| | | : | |

# O P I N I O N

## I.  INTRODUCTION

Under bankruptcy law, it is an elementary principle that an automatic stay arises upon the filing of a bankruptcy petition.  See 11 U.S.C. §362(a).  The automatic stay applies to a broad range of conduct, but in its most conventional application, the automatic stay restrains pending debt collection litigation, thereby furnishing an obvious benefit to the debtor: a "breathing spell." See, e.g., Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991).  Of course, the automatic stay can be lifted for "cause," see 11 U.S.C. §362(d), and motions for stay relief, particularly by secured creditors, are among the most common matters decided in bankruptcy courts.

In a less frequent application, the automatic stay also protects creditors.  Typically, it protects the creditor body in a bankruptcy case by preventing an individual creditor from acting unilaterally in its own self-interest to obtain payment from a debtor to the detriment of the other creditors.  E.g., Constitution Bank v. Tubbs, 68 F.3d 685, 691 (3d Cir. 1995); In re Clouse, 446 B.R. 690, 697 (Bankr. E.D. Pa. 2010).[1]

---

[1]      In Clouse, the court explained that the automatic stay serves to

(1)  prevent some creditors from gaining a preference for their claims against
(continued...)

Two (2) contested matters are presently before this court in which one (1) party seeks to enforce the automatic stay and the other seeks relief from the automatic stay. The parties are the bankruptcy debtor, Mark Iezzi ("the Debtor") and a creditor, the City of Reading ("the City"). Oddly, the City seeks to enforce the automatic stay to restrain its own pre-petition litigation against the Debtor, and the Debtor requests relief from the automatic stay (or a determination that an exception to the automatic stay applies) to permit that litigation to proceed.

The parties line up this way because each seeks a tactical advantage with respect to a pre-petition legal issue – the legal authority of Pennsylvania municipalities to impose user fees for the hauling and disposition of recyclable waste. The City prevailed on this issue in the state trial court and the Debtor appealed. The Debtor subsequently filed bankruptcy, and shortly thereafter, the state appellate court, unaware of the automatic stay of the appeal arising upon the commencement of the bankruptcy case, <u>see</u> 11 U.S.C. §362(a), issued a decision, reversing the trial court, and ruling in favor of the Debtor and against the City.

Through the competing motions in this court, the City seeks to void the adverse ruling in the state appellate court as having been entered in violation of the automatic stay and, conversely, the Debtor seeks a determination that the automatic stay is inapplicable, or retroactive relief from

---

[1](...continued)
  debtor,

  (2) forestall the depletion of the debtor's assets arising from legal costs in defending proceedings against debtor, and

  (3) avoid interference with the orderly administration of the debtor's case and the estate.

446 B.R. at 697.

the automatic stay, in order to preserve his appellate victory.

Based on events that have occurred since the two (2) motions were filed, I conclude that the underlying dispute between the Debtor and the City is moot. Therefore, for the reasons amplified below, I will grant the City's Motion enforcing the automatic stay and deny the Debtor's Motion requesting relief in order to complete the litigation that was pending in state court when this bankruptcy was filed.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Parties and the Proceedings in the Court of Common Pleas

The City is a third-class city organized and operating under a home rule charter." See, e.g., Orlosky v. City of Reading, 2011 WL 10846195, at *2 (Pa. Cmwlth. Ct. May 26, 2011) (nonprecedential); City of Reading v. Reading Lodge Fraternal Order of Police No. 9, 325 A.2d 675, (Pa. Cmwlth. Ct. 1974). Years ago, the City adopted an ordinance assessing a fee on owners of real property for hauling and disposing of recyclable materials.

The Debtor owns or co-owns thirteen (13) pieces of real estate in Reading, Pennsylvania. For a number of years, the Debtor has disputed the City's legal authority to assess the recycling fee. The present dispute centers on one (1) property, located at 660 N. 12th Street ("the Property").

From approximately 1999 to 2005, the Debtor arranged for a private company to haul the trash and recyclable materials from his properties, including the Property. For some period of time thereafter, the Debtor permitted the City to haul the recyclables from his properties. In 2007, the Debtor obtained the necessary state license to serve as a trash and recyclables hauler

himself and, with the City's consent, provided those services to his properties.

In December 2010, the City filed a claim of $1,878.34 for delinquent recycling and trash fees due on the Property for the years 1999 through 2008.  In June 2011, the City filed a writ of scire facias against the Property.[2]  In response, the Debtor filed an affidavit of defense.

After conducting a trial and considering post-trial memoranda, in which the Debtor challenged and the City defended its legal authority for assessing the recycling fee, the Court of Common Pleas ("the C.P. Court") rejected the Debtor's defense.  On October 15, 2012, the C.P. Court entered judgment in favor of the City in the amount of $1,878.34 for trash and recycling fees ("the C.P. Judgment").[3]

### B.  The Proceedings in the Commonwealth Court and the Bankruptcy Court

The Debtor appealed the C.P. Judgment to the Commonwealth Court of Pennsylvania ("the Commonwealth Court").  The Commonwealth Court held oral argument on the appeal on September 13, 2013.

Three (3) days later, September 16, 2013, the Debtor filed his chapter 13 bankruptcy case

---

[2]     The writ of scire facias is "used to enforce payment of a municipal claim out of the real estate upon which such claim is a lien."  Iezzi, 78 A.3d at 1260 n.4 (quoting Newberry Township v. Stambaugh, 848 A.2d 173, 177 n.10 (Pa. Cmwlth. Ct. 2004 (internal citation omitted)); Fox Chapel Sanitary Authority v. Abbott, 384 A.2d 1012, 1013 n.1 (Pa. Cmwlth. Ct. 1978).  A writ of scire facias initiates a procedure that provides "a mechanism by which individual parties may establish a complete factual record from which a fact-finder can ascertain the total amount due on a lien, and to give the defendant an opportunity to show cause why the plaintiff should not have execution."  18 Standard Pennsylvania Practice 2d §102:1 (West Dec. 2013) (footnote omitted).

[3]     Undoubtedly, the amount of the judgment was overstated.  During the trial, the City withdrew its claim for trash fees and requested judgment in the amount of only $1,405.17.  This was noted later by state appellate court in its post-bankruptcy decision.  See City of Reading v. Iezzi, 78 A.3d 1257, 1260 & n.5  (Pa. Cmwlth. Ct. 2013).

in this court.  He filed the bankruptcy case in order to avert tax sales of his properties that were

scheduled on account of unpaid real estate taxes.  The bankruptcy filing was not caused by the

litigation over disputed, unpaid recycling fees.[4]

      The City claims that it received no notice of the bankruptcy filing; the Debtor disputes

this contention.  Neither party notified the Commonwealth Court of the Debtor's bankruptcy

case.

      The Commonwealth Court decided the appeal on October 23, 2013 in a reported decision

issued forty (40) days after the Debtor's bankruptcy filing.  See City of Reading v. Iezzi, 78 A.3d

1257 (Pa. Cmwlth. Ct. 2013) ("the Commonwealth Court Decision").  Reversing the C.P. Court,

the Commonwealth Court held that the recycling fee was invalid because the City's authority to

assess the fee was preempted by the Solid Waste Management Act, 35 P.S.

§§6018.101–6018.1003 ("the SWMA") and the Municipal Waste Planning  Recycling, and

Waste Reduction Act, 53 P.S. §§4000.101-4000.1904 ("the MWPRWRA"), and that neither of

those two (2) statutes authorizes a municipality to impose recycling fees.  See 78 A.3d at 1268.

      On November 6, 2013, the City filed a Motion for Reargument in the Commonwealth

---

[4]     In his bankruptcy schedules, the Debtor disclosed that the aggregate value of his real
property is approximately $670,000.00, that he owes approximately $68,000.00 in mortgages on two (2)
of the properties and in excess of $80,000.00 in delinquent real estate taxes (as well as unpaid recycling
fees in an amount not immediately discernible from the disclosure).  (See Amended Schedules A, E)
(Doc. #'s 14, 33).  In his testimony, the Debtor explained that his tax delinquencies arose due to
injuries that he had suffered that rendered him unable to properly manage his income producing
properties and maintain the necessary rental income.  He further testified that he has recovered from
his injuries and can now manage the properties and increase the rental income sufficiently to pay the
delinquent taxes through a chapter 13 plan.  I credit the Debtor's testimony regarding his motivation for
filing this bankruptcy case.

Court, followed the next day by an Application for a Stay Pending Appeal.[5]

On November 14, 2013, the Debtor filed a motion in the bankruptcy court titled: *Motion for Order That the Automatic Stay Is Not Applicable Or in the Alternative Motion for Relief from the Automatic Stay Nunc Pro Tunc to September 16, 2013 to Proceed with State Court Litigation to Determine the Authority of the City of Reading to Assess Recycling Fees* ("the Debtor's Motion"). (Doc. #38). Through this Motion, the Debtor seeks validation of the Commonwealth Court decision, on a retroactive basis if necessary.

On November 14, 2013, after receiving the Debtor's Motion, the City notified the Commonwealth Court of the Debtor's bankruptcy filing, the Debtor's Motion and the hearing scheduled on the Debtor's Motion in the bankruptcy court.

The City followed up further, on December 6, 2013, by filing a motion in the bankruptcy court titled: *Motion for Order That the Judgment and Opinion of the Commonwealth Court of Pennsylvania Entered on October 23, 2013 Are Void Ab Initio and Request for Expedited Consideration* ("the City's Motion"). (Doc. #47). Through this Motion, the City seeks a declaration that the Commonwealth Court decision is void.

After granting the City's request for an expedited hearing on its Motion, I conducted a consolidated hearing on both Motions on December 11, 2013. At the hearing, the parties made the factual record which I have summarized above.

One other significant event occurred during trial. The City represented that, as a

---

[5]     The City asserts that, as of November 6, 2013, it was still unaware of the Debtor's bankruptcy filing. This is consistent with the bankruptcy court's docket, which reflects that the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines was not mailed to creditors until November 15, 2013. (See Doc. #'s 32, 40).

condition for the denial of the Debtor's Motion, it was prepared to:

- waive all of its pre-petition recycling fees with respect to the Property as well as the Debtor's other real property located in the City;

- reimburse the Debtor for any recycling fees previously paid;

- vacate the judgment of the C.P. Court entered in the <u>scire facias</u> proceeding;[6]

- waive all fees arising post-petition and prospectively, subject only to the right to collect such fees prospectively from that date, if ever, that the Pennsylvania Supreme Court rules that the City has the legal authority to assess the fees.

The ramifications of this offer ("the City Waiver Offer") will be discussed further in Part III.C., below.

### C.  Events After the December 11, 2013 Hearing in the Bankruptcy Court

On December 9, 2013, before briefing on the Stay Motions in this court was complete, the Commonwealth Court denied the City's Motion for Reargument.  This triggered the City's request for an immediate ruling on its Motion, arguing that the Commonwealth Court's order denying its Motion for Reargument, if valid despite the bankruptcy filing, "started the clock" on a further appeal and that its appeal deadline would expire on January 8, 2014.  <u>See</u> Pa. R.A.P. 1113(a).  Consequently, I accelerated the briefing schedule on the Motions.

However, upon review of the briefs and in the interest of judicial economy, I concluded that the better course was to maintain the status quo while these matters were under advisement.

---

[6]     While the City was not explicit on this point, I assume that its offer to waive all past recycling fees and to reimburse the Debtor for recycling fees actually paid, includes its willingness to vacate or mark satisfied all liens on the Debtor's properties recorded for unpaid recycling fees.

I entered an order pursuant to 11 U.S.C. §105(a) that provided: "if not already **STAYED**

pursuant to 11 U.S.C. §362(a), [the Commonwealth Court appeal] is **STAYED EFFECTIVE**

**IMMEDIATELY** and until further order of this court."  (emphasis in original).  See Alderwoods

Group, Inc. v. Garcia, 682 F.3d 958, 967 n.19 (11th Cir. 2012); In re Parker, 499 F.3d 616, 627-28

(6th Cir. 2007); Matter of L&S Industries, Inc., 989 F.2d 929, 932 (7th Cir. 1993); Value America,

Inc. v. Kamena, 265 B.R. 717, 719-20 (W.D. Va. 2001).

Briefing on the Debtor's Motion concluded on January 14, 2014.  Both Motions are ready

for decision.


# III.  DISCUSSION

## A.  The Automatic Stay - 11 U.S.C. §362(a) – General Principles

11 U.S.C. §362(a)(1) stays "the . . .  continuation . . .  of a judicial, administrative, or

other action or proceeding against the debtor that was . . .  commenced before the

commencement of the case under this title . . .   to recover a claim against the debtor that arose

before the commencement of the case under this title."

The Debtor does not dispute that, **on its face**, §362(a)(1) is applicable to the scire facias

proceeding that the City instituted against him.  As a pre-petition legal action to collect a

monetary claim against the Debtor, the scire facias proceeding falls within the plain language of

§362(a)(1).  See generally U.S. v. Sugarhouse Realty, Inc., 162 B.R. 113, 115 (E.D. Pa. 1993)

(section 362(a)(1) stays environmental enforcement action "only if none of the exceptions to the

automatic stay, which are enumerated in 11 U.S.C. § 362(b), are applicable").

Nor does the Debtor dispute that, if §362(a)(1) is applicable, the bankruptcy filing stayed

the appeal in the Commonwealth Court prior to the issuance of the Commonwealth Court

Decision.  This concession undoubtedly is consistent with applicable law.  In this Circuit, it has

long been settled that the applicability of the automatic stay to a pre-petition lawsuit is

determined by evaluating the nature of the action at its "inception" and that, for purposes of

§362(a)(1), the nature of the proceeding does "not change depending on the particular stage of

the litigation at which the filing of the petition in bankruptcy occurs." Assoc. of St. Croix

Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 449 (3d Cir. 1982).  The

automatic stay "stay[s] all appeals in proceedings that were originally brought against the debtor,

regardless of whether the debtor is the appellant or appellee." Id. (emphasis omitted).  Stated

slightly differently, if an action would be stayed in the trial court, it is stayed on appeal.

Nor does the Debtor dispute the legal proposition that if the automatic stay applies, the

Commonwealth Court Decision, issued after the automatic stay arose, is void.  Again, this is

consistent with applicable law.  See, e.g., In re Myers, 491 F.3d 120, 128 (3d Cir. 2007); In re

Siciliano, 13 F.3d 748, 751 (3d Cir. 1994); In re Raymark Industries, Inc., 973 F.2d 1125, 1132

(3d Cir. 1992).

The Debtor nevertheless contests the City's request for the entry of an order determining

that the Commonwealth Court Decision is void and does so on two (2) grounds.  First, the Debtor

maintains that the automatic stay does not apply to the scire facias litigation based on an

exception to the automatic stay found in 11 U.S.C. §362(b).  Alternatively, the Debtor contends

that cause exists to annul the stay to grant retroactive relief that would validate the

Commonwealth Court Decision.

## B.  The Exception to the Automatic Stay - 11 U.S.C. §362(b)(4)

### 1.

Section 362(b)(4) provides that the filing of a bankruptcy petition

does not operate as a stay  --

> *   *   *

> (4)  [under §362(a)(1), (2), (3) or (6)], of the commencement or
> continuation of an action or proceeding by a governmental unit
> . . . to enforce such governmental unit's or organization's police and
> regulatory power, including the enforcement of a judgment other than
> a money judgment, obtained in an action or proceeding by the
> governmental unit to enforce such governmental unit's or
> organization's police or regulatory power.

11 U.S.C. §362(b)(4).[7]

On its face, §362(b)(4) excepts from the stay legal actions brought to enforce a

governmental unit's police and regulatory power and the enforcement of judgments obtained in

such actions.  This exception to the automatic stay is itself subject to an exception: §362(b)(4)

does not except from the stay actions "to enforce" a "money judgment."

To determine the applicability of §362(b)(4), a bankruptcy court must first decide

---

[7]        The substance of §362(b)(4) was previously codified, in most respects, in subsections (4)
and (5) of §362(b).  In 1998, subsection (4) was amended and subsection (5) was repealed by the
Omnibus Consolidated and Emergency Supplemental Appropriations Act of October 21, 1998, PL
105–277, 112 Stat. 2681.  One court described the 1998 amendment as "modif[ying] the police power
exception to the automatic stay in bankruptcy proceedings by combining former subsections (b)(4) and
(b)(5) into one subsection, (b)(4), and, <u>inter alia</u>, broadening the reach of the exception to include the
automatic stay of acts designed to obtain possession of property of the estate or of property from the
estate or to exercise control over property of the estate . . . [under §362(a)(3)]."  <u>In re Appeal of
Allegheny Health, Educ. and Research Foundation</u>, 252 B.R. 309, 323 (W.D. Pa. 1999) (quotation marks
omitted").

        The 1998 statutory changes are not material in the present matter.  Thus, pre-1998 case
law remains good law.

whether the state court proceeding involves the enforcement of the governmental unit's police

and regulatory power.  If so, the proceeding is not stayed.  However, even if the proceeding

generally is not stayed, the bankruptcy court also may have to determine whether the

governmental unit is attempting to enforce a money judgment, which is stayed notwithstanding

the provisions of §362(b)(4).

In Nortel Networks, Inc., 669 F.3d 128 (3d Cir. 2011), the Court of Appeals explained

that the §362(b)(4) stay exception "discourages debtors from submitting bankruptcy petitions

either primarily or solely for the purpose of evading impending governmental efforts to invoke

the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously

threaten the public safety and welfare (e.g., environmental and/or consumer protection

regulations)."  669 F.3d at 137 (quoting In re McMullen, 386 F.3d 320, 324-25 (1st Cir. 2004)).

The court also explained that courts have employed two (2) related tests for determining whether

governmental legal action involves the exercise of its police power.

> The **pecuniary purpose test** asks whether the government primarily seeks to
> protect a pecuniary governmental interest in the debtor's property, as opposed to
> protecting the public safety and health. The **public policy test** asks whether the
> government is effectuating public policy rather than adjudicating private rights. If
> the purpose of the law is to promote public safety and welfare or to effectuate
> public policy, then the exception to the automatic stay applies. If, on the other
> hand, the purpose of the law is to protect the government's pecuniary interest in
> the debtor's property or primarily to adjudicate private rights, then the exception
> is inapplicable.

669 F.3d at 139-40 (emphasis added).

### 2.

In In re University Med. Ctr., 973 F.2d 1065, 1075 (3d Cir. 1992), the Court of Appeals

described §362(b)(4) as applying "where a governmental unit is suing a debtor to prevent or stop

violation of fraud, environmental protection, consumer protection, safety, or similar police or

regulatory laws, or attempting to fix damages for violation of such law."  The case law is

consistent with this characterization.[8]

The common thread in the case law is that courts will find the §362(b)(4) exception

applicable when the governmental litigation (or other action) was triggered by the debtor's failure

to comply with a regulatory obligation affecting public health, safety or welfare.  The question in

the case sub judice is whether the unpaid recycling fees are in the nature of an obligation

imposed in connection with the enforcement of the Debtor's duty to comply with a regulatory

scheme designed to promote public health, welfare or safety, or whether their collection merely

promotes the pecuniary interest of the government.

---

[8]     See e.g., In re Mystic Tank Lines, Corp., 544 F.3d 524, 525 (3d Cir. 2008) (State of New York action to recover damages from shipper that discharged petroleum, pursuant to N.Y. Nav. Law §181); U.S. v. Nicolet, Inc., 857 F.2d 202 (3d Cir. 1988) (action by U.S. to recover costs expended in clean-up of hazardous waste site pursuant to Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §9604); Brock v. Morysville Body Works, Inc., 829 F.2d 383, 384 (3d Cir. 1987) (federal Secretary of Labor petition to enforce Occupational Safety and Health Administration citation for violations of safety and health standards under 29 U.S.C. §654(a)(2)); Penn Terra, Ltd. v. Department of Environmental Resources, 733 F.2d 267, 269 (3d Cir. 1984) (Commonwealth legal action filed "to compel the debtor to correct environmental damage"); In re W.R. Grace & Co., 412 B.R. 657, 660 (D. Del. 2009) (New Jersey action to impose penalties for false statements in report disclosing hazardous material as required by New Jersey's Industrial Site Recovery Act, N.J.S.A. 13:1K–6–1).

Similarly, governmental proceedings designed to enforce legal standards imposed upon actors in the economic marketplace have been held to fall within the §362(b)(4) exception to the automatic stay.  See, e.g., Solis v. Makozy, 2012 WL 1458232, at *1 (W.D. Pa. Apr. 27, 2012) (federal Secretary of Labor action enjoin violation of Fair Labor Standards Act, 29 U.S.C. §§201 et seq.); In re Burns, 2008 WL 3246244, at *4 (Bankr. M.D. Pa. Aug. 7, 2008) (governmental action for injunctive relief and restitution for violations of state consumer protection statute, 73 P.S. 201-1 et seq.).

**3.**

On its face, there is little about the City's efforts to collect the recycling fee from the

Debtor that appears to implicate the enforcement of health, welfare and safety regulations.  The

City provides a service to its citizens  –  the collection and disposition of recyclable waste  – and

charges a fee for the service.  The litigation giving rise to this dispute was based entirely on the

Debtor's failure to pay the fee for the service.  Thus, the City's interest appears to be pecuniary,

rather than regulatory, in nature.

The Debtor suggests, however, that the above description is superficial.  He argues that

the entire statutory structure in Pennsylvania at the state and local level regulating the disposition

of waste and recycling is an exercise of police and regulatory powers.  He would characterize the

recycling fees as only a minor appendage to the state regulatory scheme, one that cannot be

separated from the exercise of those powers.

In making this argument, the Debtor must accept that the applicability or non-

applicability §362(b)(4) to the City's lawsuit to collect the unpaid fees is dependent upon the

source and context of the City's statutory authority for assessing the fees.

**4.**

The parties have provided this court with very little information regarding the background

and history of the recycling fees imposed by the City.  In particular, neither party discussed the

immediate source of the City's putative authority for assessing the recycling fee: the Code of the

City of Reading ("the Reading Code").[9]  As explained below, I find the Reading Code a valuable

---

[9]     I have qualified my description of the Reading Code in two ways, by describing it as the
(continued...)

tool in evaluating whether the City's interest in collecting the recycling fees at issue is primarily a pecuniary interest or a public welfare, health or safety interest.  Regardless whether the Pennsylvania appellate courts ultimately determine that the legal authority for the recycling fees found in the Reading Code is trumped by other statutes, the City's collection actions are based on its municipal ordinances.  The bankruptcy law question before the court is whether, in acting pursuant to its ordinances to assess and collect the disputed recycling fees, the City was acting to advance its pecuniary interest or its police and regulatory powers.

Based on the structure and content of the Reading Code,[10] I conclude that the C.P. Court scire facias proceeding and the appeal therefrom do not involve the exercise of the City's police

---

[9](...continued)
"immediate source," as well as the "putative" authority, for the assessment of the recycling fees.

I refer to the Reading Code as the "immediate" source of authority for assessment of the recycling fee because, as a creature of the state, the City's legal authority to act must be based on other sources of law i.e., state statutes.  See, e.g., Genkinger v. City of New Castle, 84 A.2d 303, 304 (Pa. 1951) ("Municipalities are not sovereigns; they have no original or fundamental power of legislation; they have the right and power to enact only those ordinances which are authorized by an act of the legislature"); accord Cali v. City of Philadelphia, 177 A.2d 824, 827 (Pa. 1962); In re Acquisition of Water System in White Oak Borough, 93 A.2d 437, 438 (Pa. 1953).  The Third Class City Code authorizes cities to provide services for "the collection, removal and disposal of garbage, ashes and other waste or refuse material" and to impose and collect "by lien or otherwise" reasonable fees and charges for such services. 53 P.S. §37403(6).

I use the term "putative authority" in recognition of the legal argument, accepted by the Commonwealth Court in the Commonwealth Court Decision (the status of which is at issue in this contested matter), that the City's authority to assess recycling fees has been preempted by other Pennsylvania statutes.

[10]     Pursuant to 53 P.S. §36014.1, the City adopted the Reading Code to consolidate and codify its general body of ordinances.  See Reading Code §1-101.  The Reading Code is available at http://www.readingpa.gov/sites/default/files/council/ordinance/master/Introduction.pdf.

and regulatory power.  Rather the proceedings are intended to advance the City's pecuniary

interest and therefore, are not excepted from 11 U.S.C. §362(a)(1) by §362(b)(4).

**5.**

Part 12 of Chapter 18 of the Reading Code is titled "Property Maintenance Rules and

Regulations."  Within Part 12, §180-1203 is titled "Quality of life (QOL) violations."  It then lists

twenty-three (23) obligations, denoted as "QOL.001 et seq."  The obligations include such things

as: (a) cleaning up animal waste daily, (b) maintaining the property free from weeds plant growth

in excess of six (6) inches; and  (c) removing snow or ice from the sidewalk within two (2) hours

after the cessation of the falling of snow or ice.

For present purposes, the sixteenth QOL obligation in §180-1203 is most relevant.  It

imposes on the owners of all residential, commercial and industrial properties an obligation

> to ensure storage, collection and disposal of all recyclables from their property in
> such a manner not to create a public nuisance. Storage of recyclables is only
> allowed in approved containers which must be kept clean and sanitary at all times.

Reading Code §180-1203 (QOL.16).[11]

The Reading Code authorizes police officers and certain other public officers to enforce

Part 12 of Chapter 180 by issuing a citation or ticket.  Reading Code §180-1205.  Upon the

issuance of a violation ticket, the property owner may appeal to the Property Maintenance/Codes

Administrator, with further appeals to the Court of Common Pleas.  Violations of §180-1203

---

[11]     The Reading Code contains a separate Chapter 180c, titled Property Maintenance Code.
The Property Maintenance Code repeats the obligation imposed on the owners of all residential,
commercial and industrial properties "to ensure storage, collection and disposal of all recyclables from
his or her property and in such a manner not to create a public nuisance."  Reading Code, Chapter 180c,
§308.3.4.

QOL.016 are punishable fines of $25.00 for the first offense, $50.00 for the second offense and $100.00 for the third offense.  Reading Code §1280-1210.

Separate and apart from the recycling obligation and administrative enforcement scheme described above, the Reading Code includes a separate Chapter 212, titled "Fees."  Part 1 of Chapter 212 sets forth a fee schedule for numerous City departments.  For example, §212-106 imposes permit fees starting at $50.00 (and increasing depending upon the cost of the work) for construction work subject to §180-802.  Section 212-113 establishes a $35.00 fee for administrative retrieval of a fire report.  Section 212-118 imposes a permit fee on massage therapists of $125.00.  There are many others.

Recycling fees are governed by §212-136, which authorizes a "Recycling service fee (annual)" of $82.33."  If the fees are not paid, the Pennsylvania Municipal Claims and Tax Liens Law, 53 P.S. §§7101, et seq., authorizes the City to record a lien and then enforce the lien against the subject property through a scire facias proceeding.  See 53 P.S. §§7143-45, 7181-7193.3.

**6.**

The foregoing summary of the Reading Code illustrates that a Reading property owner might be subject to two (2) distinct types of monetary obligations under the Reading Code that relate to recycling.

The first type of liability, grounded in Reading Code §§180-1203, 1205, 1210, is in the nature of a penalty imposed for the failure to comply with "quality of life" regulations imposed on all property owners.  These obligations are enforced through the issuances of citations, with a right of administrative appeal to a City agency and judicial review in the Court of Common

-16-

Pleas.  Judicial proceedings to enforce the citations and assess penalties for violations of Chapter 180 of the Reading Code easily would appear to fall within the §362(b)(4) exception to the automatic stay as proceedings designed to protect public health and safety.

The second type of liability derives from Chapter 212.  These liabilities do not arise because the property owner has violated any legal obligation imposed by the Reading Code.  Rather, these liabilities are assessed on all residents "regardless of whether they actually need or use the municipality's collection and disposal services and even if they dispose of their waste and recyclables through other means."  <u>City of Reading v. Heckman</u>, 2012 WL 8677730, at *3 (Pa. Cmwlth. Ct. Nov. 8, 2012).  These liabilities are pecuniary in nature and fall outside §362(b)(4).

The recycling fees at issue in this case emanate from Chapter 212, not Chapter 180.  <u>See</u> Reading Code §212-136.  As such, the fees do not arise from violations of the Debtor's obligations under Chapter 180 and were not assessed because the Debtor failed to comply with any type of regulation governing his conduct.  The fundamental purpose of the Chapter 212 recycling fees at issue is pecuniary, to reimburse the government for a service provided.  Thus, the text and structure of the Reading Code itself reinforces the intuitive proposition that the <u>scire facias</u> collection proceedings are not excepted from the automatic stay by §362(b)(4).

Furthermore, the Chapter 212 recycling fee enforcement mechanism, <u>i.e.</u>, a <u>scire facias</u> proceeding, resembles an ordinary judicial debt collection process, the primary distinction being that the creditor is a governmental unit rather than a private creditor.  <u>See</u> n.2, <u>supra</u>.  The proceeding involves neither fines nor coercive orders (<u>i.e.</u>, injunctions) designed to compel a party to conform their behavior to any legal requirement.  It is solely concerned with the payment of money.

-17-

Indeed, the statutory scire facias municipal claim enforcement procedure[12] is deeply rooted in Pennsylvania municipal law.  In its present codification as part of the Pennsylvania Municipal Claims and Tax Liens Law, it has been in place since 1923.  See, e.g., P.L. 207, §17 (May 16, 1923).  Given its nature as a debt collection mechanism for municipal claims, broadly defined under Pennsylvania law as including "a tax assessed, service supplied, work done, or improvement authorized and undertaken, by a municipality," 53 P.S.§ 7101 (emphasis added), it is not surprising that the Debtor has cited no bankruptcy case, and my research has located no reported case since the enactment of the Bankruptcy Code more than thirty-five (35) years ago, holding that a Pennsylvania scire facias proceeding on a municipal claim is excepted from the automatic stay under the §362(b)(4) police and regulatory power exception.

The only case cited by the Debtor that arguably supports its position is In re R.T. Opdenaker & Sons, Inc., 1996 WL 332403 (Bankr. E.D. Pa. June 11, 1996) (per Scholl, C.J.). Opdenaker involved a Delaware County ordinance that required solid waste haulers to dispose of waste at a county transfer station for a set fee.  The debtor was a trash hauler who asserted that the fees were unlawful to the extent they exceeded the market rate and who paid only what the amount it considered to be the market rate.  The county sought injunctive and monetary relief in state court and a motion in the bankruptcy court for a determination that the state court litigation was excepted from the automatic stay by 11 U.S.C. §362(b)(4) and (5) or alternatively, for abstention.

---

[12]      "In Pennsylvania, municipal claim procedure in general and scire facias procedure in particular, is purely statutory."  Western Clinton County Mun. Authority v. Estate of Rosamilia, 826 A.2d 52, 56 (Pa. Cmwlth. Ct. 2003).

The Opdenaker's court's only "holding" was that it would "defer" a decision on the county's request for a determination that the §362(b)(4), (5) exception to the stay applied to the state court litigation.  It did so as a prudential matter, because it concluded that the county had no immediate need for a decision and that the issue might be rendered moot in the near future. Nevertheless, the court went on to state, in dictum, that it saw "little basis" for the government's argument that §362(b)(4) and (5) did not apply.  See 1996 WL 332403, at *9.

I decline to follow the court's dictum in Opdenaker.  I find it both unpersuasive and distinguishable.

Opdenaker is unpersuasive because its logic was faulty.  The court explicitly declined to consider whether the applicable statute was "an exercise of the police power, as opposed to its effect as a fund-raising measure," id. at *8, because it believed that, in order to decide the issue, it would have to resolve the merits of the underlying dispute between the parties (which, quite properly, it considered inappropriate).  Having declined to evaluate the "pecuniary vs. regulatory" issue, the court had no logical, legal foundation for concluding that §362(b)(4) likely applied.

More importantly, the Opdenaker facts are distinguishable.  The nature of the interest the government was seeking to enforce differed materially from the governmental interest in this case.  In Opdenaker, the government was regulating the conduct of commercial trash haulers (i.e., mandating the use of the county transfer station) and, in effect, was regulating the conduct of an industry player and setting prices in the economic marketplace.  Not surprisingly, in the state court litigation, the government not only sought monetary relief (i.e.,the money owed at the price levels set in the statute), but also injunctive relief to compel compliance with other statutory obligations.  The regulation of the debtor's conduct and the government's monetary claims were

-19-

intertwined.  Those facts in no way resemble the scire facias dispute here, which involves a

government service provided to the public and a lawsuit to collect unpaid fees for the service

through the routine municipal claim debt collection procedure without any request for injunctive

relief.[13]

_____

[13]        Without direct consideration of the applicable statutory framework governing recycling
fees or the nature of the scire facias proceedings at issue, the Debtor suggests that City has nonetheless
implicitly admitted that its real motivation regarding the recycling fees is regulatory and not pecuniary.
He depicts the City as being "concerned with the entire recycling program, waste management, the
environment and the health of the residents, not only of the City of Reading but of over 1,000
municipalities in the Commonwealth . . . ."   (Debtor's Initial Memorandum at 6 (unpaginated)) (Doc. #
60).  He suggests that the City's real motivation is revealed by the City Waiver Offer and in an
Application for a Stay Pending Appeal filed in the Commonwealth Court, to which it "attache[d] various
letters and statement of the impact of whether recycling fees can be charged," including a "memorandum
to the mayor of the City . . . [that] discusse[d] at length the environmental and social impact of the
recycling program . . . ."  (Id.).   Thus, he asks this court to conclude that the City's effort to collect its
fee is designed to promote public policy rather than adjudicate private rights and therefore, satisfies the
"public policy" test articulated in Nortel Networks.

        I am unpersuaded by this argument for two (2) reasons.

        First, I do not find the City Waiver Offer, made almost 2 ½ years after the
commencement of the scire facias proceeding in the C.P. Court, probative or relevant regarding the
nature of the scire facias proceeding for purposes of §362(b)(4). Not only is it remote in time from the
institution of the legal proceeding, but it also is the obvious product of a tactical, litigation decision based
on the peculiar events that have occurred since the Debtor's bankruptcy filing (i.e., the issuance of the
Commonwealth Court Decision in technical violation of the automatic stay).  In these circumstances, it is
far too great a leap in logic to treat the City's decision to forego collection against one (1) property owner
as proof that the City's general interest in the disputed legal issue in the litigation is not pecuniary in
nature.

        As for the filings in the Commonwealth Court referenced by the Debtor, the argument is
the product of selective editing.  Read in its entirety, the City's Application for a Stay Pending Appeal, at
a minimum, is equally supports the inference that the City's primary motivation in defending its
recycling fees is the protection of a critical revenue stream.  While the Debtor accurately identifies
references in the Application to the environmental impact of the Commonwealth Court Decision, much
of the City's argument revolved around the fiscal impact of the court's ruling.  The City emphasized that
recycling fee revenue accounted for $2.2 million of its $2.8 million recycling program budget and that to
maintain the program it would have to divert revenue from "other areas of its budget" and that as an "Act
47 financial distressed municipality," it believed that "there is no room in the City's general budget to
compensate for the loss of its recycling user fees."  (City Application for Stay Pending Appeal at 7) (Ex.
D-2).

Thus, I conclude that the City's scire facias proceeding in the C.P. Court to collect the

Debtor's unpaid recycling fees, and the appeal to the Commonwealth Court, are subject to the

automatic stay and are not excepted from the automatic stay by 11 U.S.C. §362(b)(4).[14]


## 7.

Before concluding my discussion regarding the §362(b)(4) exception to the automatic

stay, I acknowledge the Debtor's point that statutes relating to the disposition of waste and

recyclable materials, in general, involve the exercise of governmental police and regulatory

power.  I am also cognizant of the Court of Appeals' admonition that, at least in the context of

cases involving environmental hazards, the §362(b)(4) exception to the automatic stay should be

"construed broadly."  See Nortel Networks, 669 F.3d at 140.  Nevertheless, the Debtor's core

argument –  that because recycling is important to the public, any fees associated with a local

government-operated recycling program are regulatory and not pecuniary in nature –  proves too

much.  It has no limiting principle.  If accepted, any litigation relating to virtually any

government monetary claim that has any relationship to a government regulatory program, no

matter how attenuated that relationship might be, would be excepted from the automatic stay.

This would exceed the purpose of the §362(b)(4) exception, which is "to prevent or stop

---

[14]      In light of this ruling, it is unnecessary to decide whether the exception to the automatic
stay exception (i.e., actions to "enforce" a "money judgment") applies, as the City contends.  I note,
however, that in light of the fact that the scire facias proceeding is designed only to resolve disputes as to
the validity or amount of the City's claim and is nothing more than a precondition to execution against
the Property, see n.2, supra, it is difficult to envision how the scire facias proceedings, either in the trial
court or the appellate court, constitute the "enforcement" of a money judgment, as that term has been
construed under 11 U.S.C. §362(b)(4).  See Nicolet, 857 F.2d at 209 (only seizure of property and not
reduction of government's claim to judgment is stayed); Mystic Tank Lines, 544 F.3d at 527 (same).

violation of fraud, environmental protection, consumer protection, safety, or similar police or

regulatory laws, or attempting to fix damages for violation of such law," University Med. Ctr.,

973 F.2d at 1075, and would virtually eliminate the "pecuniary purpose" test that the courts have

developed.

In applying §362(b)(4), courts have been careful to make sure that "state and local

governmental units cannot, merely by invoking the nominal exercise of their police or regulatory

powers, circumvent the prophylaxis afforded to debtors and creditors alike by federal bankruptcy

law." In re Hoffman, 65 B.R. 985, 988 (D.R.I. 1986).

For example, In re Nejberger, 112 B.R. 714, 722-23 (Bankr. E.D. Pa. 1990), the

bankruptcy court held that a state law which required a liquor-licensee to pay its prepetition state

taxes or arrange for such payment before obtaining license renewal was designed to protect the

state's public fisc and that §362(b)(4) was inapplicable.[15] Accord In re Bertuccio, 414 B.R. 604,

616-17 (Bankr. N.D. Cal. 2008) (same holding in context of state contractor's license).  It is hard

to identify a statutory scheme that is more regulatory in nature than that relating to liquor control.

Under the Debtor's theory, the linkage of tax payments to liquor license regulatory scheme

should have resulted in a determination that the automatic stay was inapplicable under

§362(b)(4).  But it did not.

Similarly, In re Reliance Group Holdings, Inc., 273 B.R. 374, 380-81 (Bankr. E.D. Pa.

2002), the Insurance Commissioner filed an emergency petition in state court, seeking control of

---

[15]    The order issued by the bankruptcy court in Nejberger was vacated by the district court
on appeal, but only because the district court concluded that the remedy provided for the violation of the
automatic stay was overbroad.  The holding that the stay was violated was not disturbed because the
specific issue regarding the applicability of 11 U.S.C. §362(b)(4) was not preserved for appeal.  See In re
Nejberger, 120 B.R. 21, 24-25 & n.5 (E.D. Pa. 1990).

the debtor's assets on the legal theory that those assets belonged to an insolvent insurance

company and that the debtor should be treated as holding those assets in a constructive trust and

sought a determination that the state court action was excepted from the automatic stay.  The

bankruptcy court rejected the argument and concluded that the state court litigation was

essentially pecuniary in nature, despite the fact that the government was invoking powers under

the state insurance statute and insurance is an industry that is heavily regulated pursuant to the

state's police and regulatory powers.

Nejberger and Reliance Group Holdings illustrate the principle that §362(b)(4) frees

governmental units from the automatic stay only for "those actions which represent a **direct

application** of the unit's police or regulatory powers."  In re Poule, 91 B.R. 83, 86 (B.A.P. 9th

Cir. 1988) (emphasis added, quotations and citation omitted).  In this case, for the reasons

explained earlier, I conclude that the scire facias proceeding and the appeal in the

Commonwealth Court do not involve a direct exercise of the City's police and regulatory power

and therefore, the scire facias proceedings, including the Commonwealth Court appeal, are not

excepted from 11 U.S.C. §362(a)(1) by §362(b)(4).  I reject the Debtor's argument that the

subject matter connection between recycling fees by a municipality and the general state interest

in regulating the disposition of recyclable waste material, by itself, provides sufficient grounds

for invoking 11 U.S.C. §362(b)(4).


### C.  Relief from the Automatic Stay  – 11 U.S.C. §362(d)

Having concluded that the automatic stay applies and that the §362(b)(4) exception to the

automatic stay does not apply, it follows, as stated earlier, that the Commonwealth Court

Decision, entered by that court without knowledge of the filing of the bankruptcy case, was

entered in technical violation of the automatic stay and is void.  See Part III.A., supra.  The

remaining questions are whether the Debtor should be granted relief from the automatic stay to

complete the appellate litigation of the scire facias proceeding, and, if so, whether such relief

should be retroactive so as to validate the technically void Commonwealth Court Decision.


## 1.

Relief from the automatic stay is governed by 11 U.S.C. §362(d), which provides, in

pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided under subsection (a) of this section, such as by
> terminating, annulling, modifying, or conditioning such stay —
>
> > (1) for cause, including the lack of adequate protection of an interest in
> > property of such party in interest . . . .

The Debtor's request for relief presents the question whether there is "cause" to lift the

stay to permit the state court litigation over the validity of the recycling fees to proceed to a final,

non-appealable judgment.  Bankruptcy courts are accorded considerable discretion in

determining whether cause exists for relief from the automatic stay.  See, e.g., In re Szymanski,

413 B.R. 232, 253 (Bankr. E.D. Pa. 2009); accord Matter of Holtkamp, 669 F.2d 505, 507 (7th

Cir. 1982).

Both sides cite to Judge Fox's opinion in In re Drauschek, 481 B.R. 330 (Bankr. E.D. Pa.

2012) and I agree that Drauschek concisely identifies the considerations that are relevant in this

case in the exercise of the discretion afforded the bankruptcy court under §362(d):

> [T]he bankruptcy stay may be modified when there is an administrative need in
> the bankruptcy case to fix the amount of the claim and the claim dispute has been
> pending for considerable time in a non-bankruptcy forum. Issues of comity and
> economy may dictate that the non-bankruptcy forum conclude the resolution of
> that dispute and the bankruptcy stay should be modified for such purpose.

Id. at 345; see generally In re Irwin, 457 B.R. 413, 426 (Bankr. E.D. Pa. 2011) (in evaluating

whether to grant relief from the automatic stay, bankruptcy court considers, inter alia,

consequences of permitting claim to proceed in nonbankruptcy forum on the bankruptcy

process).

When a debtor and creditor have been locked in a longstanding state court dispute

regarding the validity of the creditor's claim that is interrupted and stayed by a bankruptcy filing,

it is well within the discretion of the bankruptcy court to defer to the ongoing state court

proceedings, regardless whether it is the debtor or the creditor that requests stay relief.  See

Matter of Highway Truck Drivers and Helpers Local Union 107, 98 B.R. 698 (E.D. Pa. 1989)

(affirming bankruptcy court grant of relief from stay to permit debtor to prosecute appeal of

adverse state court monetary judgment); vacated as moot, 888 F.2d 293 (3d Cir. 1989); see also

In re Wilson, 116 F.3d 87, 90-91 (3d Cir. 1997) (bankruptcy court abused its discretion in

denying creditor relief from the automatic stay to appeal adverse state court judgment which

would preclude creditor's nondischargeability claim under 11 U.S.C. §523(a), where can be

resolved more quickly in state court on appeal than in the bankruptcy proceedings).

This case, however, differs from the conventional posture described above in two (2)

ways: (1) the Commonwealth Court Decision was issued without knowledge of the bankruptcy

stay and (2) the City does not intend to file a proof of claim seeking a distribution from the

bankruptcy estate and has gone even further, waiving its right to post-petition recycling fees (at

least so long as the disputed legal issue has not been decided by the Pennsylvania Supreme

Court).[16]

Based on these differences, the decision whether to grant relief from the automatic stay in

this case largely turns on the consequences of the City Waiver Offer.  While the issue is not

discussed in these terms by the parties, the concerns generated by the City Waiver Offer are those

of justiciability and mootness.  I frame the decisive issue as follows:

> **Does the City's unilateral decision to drop all of its monetary claims against
> the Debtor for recycling fees render the parties' dispute moot and non-
> justiciable, mandating denial of the Debtor's Motion and maintenance of the
> status quo – the status quo being that the Commonwealth Court appeal was
> stayed by the bankruptcy filing and that the Commonwealth Court Decision
> is void?**

As explained below, I conclude that this dispute is moot and that the Debtor's Motion

should be denied, provided that the City Waiver Offer (as slightly modified in the manner to be

---

[16]    These differences have led to the tactical maneuvering for which each side disparages
the other.

Based on the Debtor's unwillingness to withdraw the Debtor's Motion in light of the
City Waiver Offer, the City accuses the Debtor of being on a crusade, desiring to continue the state court
litigation in order to achieve an abstract ideological victory rather than to obtain a practical, personal
economic benefit. The City also accuses the Debtor of bad faith, asserting that he purposely failed to
notify the Commonwealth Court of his bankruptcy filing three (3) days after the appellate oral argument,
suggesting that the Debtor viewed the bankruptcy filing as an opportunity to a "free shot" at invalidating
the City's recycling fee: if the Debtor lost the appeal, the decision could be challenged as entered in
violation of the automatic say, but if the Debtor prevailed in the appeal the Debtor could seek relief from
the automatic stay nunc pro tunc to preserve the legal victory.

The Debtor disputes any bad faith conduct on his part, emphasizing that his bankruptcy
filing was prompted by financial difficulties entirely unrelated to recycling fee litigation.  The Debtor
counterattacks,  accusing the City of attempting "to avoid an adverse decision," in effect, an unseemly
attempt to manipulate the legal system.  (Debtor's Second Memorandum at 6-7 (unpaginated) (Doc. #
64).

I do not find this dispute to arise as a product of bad faith by either party and find it
appropriate to decide the matter for the reasons expressed below in Part III.C.

described below in footnote 19) is implemented.  Thus, I answer the question, as framed above,

in the affirmative.[17]

**3.**

The mootness doctrine is grounded in the principle that

> the exercise of judicial power [under Article III of the U.S. Constitution] depends
> upon the existence of a case or controversy.  Mootness derives from Article III's
> prohibition against federal courts issuing advisory opinions. . . . [I]t applies where
> interim events remove the effects of the violation that prevent [a federal] court
> from granting any relief.

Cinicola v. Scharffenberger, 248 F.3d 110, 118 (3d Cir. 2001) (internal citations omitted); see

also 13B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure §3533.1

(Westlaw 2013).

A matter is moot if either:

> (1) the issues presented are no longer live, or

> (2) the parties no longer have a cognizable interest in the outcome.

Brown v. Philadelphia Housing Authority, 350 F.3d 338, 343 (3d Cir. 2003); Matter of Establish

Inspection of Metal Bank of America, Inc., 700 F.2d 910, 913 (3d Cir. 1983).

Stated slightly differently,

> the mooting of a case can occur in one of two ways. It may occur because the legal
> issue in dispute is no longer amenable to review and judicial relief would serve no
> purpose, or it may occur because a party no longer has a personal stake in the
> controversy and has, in essence, been divested of standing.

In re Aloia, 496 B.R. 366, 377 (Bankr. E.D. Pa. 2013) (citation omitted).  Thus, mootness may be

---

[17]     Because I am denying the Debtor's Motion, I need not address his request for retroactive
relief from the automatic stay.

said to be "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." Id. at 377 (internal quotations and citations omitted).

In evaluating the mootness issue presented here, my perspective is influenced by the fact that the issue arises in a bankruptcy case. In deciding whether to grant relief from the automatic stay under 11 U.S.C. §362(d) to permit litigation to proceed in another forum, the bankruptcy court analyzes the request for relief in terms of its potential impact on the administration of a bankruptcy case. See, e.g., Irwin, 457 B.R. at 426. From a bankruptcy standpoint, the City Waiver Offer undoubtedly moots the issues because the City Waiver Offer leaves no justiciable dispute between the parties that will affect either the allowance of claims or the feasibility of the Debtor's chapter 13 plan.

For bankruptcy purposes, if the City waives its claims and its right to file a proof of claim for any pre-petition recycling fees for any of the Debtor's properties and does not intend to seek such payment from the Debtor prospectively, there is no live dispute that can affect the bankruptcy case. Upon implementation of the City Waiver Offer,[18] the City will be neither a pre-petition creditor nor a post-petition creditor for any recycling fees and the parties' past dispute over the City's right to collect recycling fees from the Debtor cannot have any impact on the confirmation of the Debtor's chapter 13 plan or on the Debtor's performance of a plan after

---

[18]     The Debtor questions the City's authority to make the City Waiver Offer. See Debtor's Second Memorandum at 7 (unpaginated). However, the City's counsel represented to the court that he had the authority to present the City Waiver Offer and I have no reason to question that representation. In any event, the Debtor's concern will be addressed in the order that I enter. It will make the denial of the Debtor's Motion dependent upon the City's performance of its promises by a date certain.

confirmation.  Accordingly, the Debtor no longer has a legally cognizable interest in the outcome of his debate with the City regarding its legal authority to assess recycling fee.[19]  By continuing to press for relief from the automatic stay in the face of the City Waiver Offer, he seeks leave to litigate an abstract legal issue that will not affect him.

The present case is analogous to the situation presented to the Court of Appeals in Highway Truck Drivers.  In that case, the creditors obtained judgment against the debtor which was affirmed by the Pennsylvania Supreme Court.  Before the deadline for requesting reargument had expired, the debtor filed its bankruptcy case.  The debtor then sought relief from the

---

[19]      One qualification of the statement in the text is necessary.  I envision one scenario in which the Debtor's bankruptcy case could be affected by recycling fees, notwithstanding the City Waiver Offer in its present form.  The City Waiver Offer has a condition subsequent: if the Pennsylvania Supreme Court rejects the preemption argument and renders a decision validating the municipality's right to assess recycling fees, the City prospectively may assess those fees on the Debtor's properties.  If this were to occur prior to completion of the Debtor's chapter 13 plan, the additional monetary expense could have a negative impact on the Debtor's ability to perform the plan.  This could affect the bankruptcy case.

In making the City Waiver Offer, I understand the City's intent to be to eliminate any impact that the recycling fees might have on the Debtor's bankruptcy reorganization.  Therefore, I consider this temporal shortcoming in the City Waiver Offer to be unintended and one that the City is prepared to remedy.  It requires only a minor modification. In the order denying the Debtor's Motion, I will condition the City's right to resume assessing recycling fees against the Debtor's properties upon the occurrence of both of the following events:

(1)  a Pennsylvania Supreme Court renders a decision upholding the authority of the City (or other third class city) to assess the recycling fees and that decision becomes final; and

(2)  the current bankruptcy case has resulted in either:

(a)  completion of a confirmed chapter 13 plan;

(b)  dismissal; or

(c)  entry of a chapter 7 discharge following conversion from chapter 13.

automatic stay to pursue its appellate rights.  The bankruptcy court granted the debtor relief for

that purpose, but also granted relief from the automatic stay to the judgment creditors to permit

execution on their judgment, provided that execution was not otherwise stayed under applicable

state law by the posting of a supersedeas bond.  <u>See</u> 888 F.2d at 296.  Both sides appealed the

bankruptcy court orders to the district court, which affirmed the bankruptcy court order.  <u>See</u> 98

B.R. at 705.

    While the appeal was pending in the district court, no stay pending appeal having been

obtained, the Pennsylvania Supreme Court reversed its prior decision, relieving the debtor of all

liability, a decision that later became final and subject to no further review.  The district court

affirmance of the bankruptcy court was entered after the Pennsylvania Supreme Court's ruling in

favor of the debtor.  The creditors appealed the district court order to the Court of Appeals,

asserting that the debtor should not have been granted relief from the automatic stay.

    The Court of Appeals held that it was unnecessary to "consider the propriety of the

bankruptcy court's order lifting the automatic stay because . . . the subsequent decision of the

Pennsylvania Supreme Court reversing its first judgment mooted the . . . creditors' cross-appeal."

888 F.3d at 296-97.  The court reasoned that once the Pennsylvania Supreme Court ruled (after

entry of the unstayed bankruptcy court order lifting the stay) and determined that the debtor had

no liability, the district court was bound to accord that decision full faith and credit, <u>see</u> 28

U.S.C. §1738, and therefore, the district court could not provide the creditors with any form of

effective judicial relief.  888 F.3d at 298-99.

    The City Waiver Offer in this case is the functional equivalent of the Pennsylvania

Supreme Court ruling that absolved the <u>Highway Truck Drivers</u> debtor of its liability.  By

eliminating the underlying liability issue between the parties, the substantive dispute between the

parties is resolved and no purpose can be served by the grant of stay relief to permit further

litigation of any legal issues.[20]

Indeed, even if this court were to grant relief from the automatic stay, the outcome in the

state courts and the ultimate effect on the Debtor's legal rights would likely be no different.

Pennsylvania appellate courts do not decide moot questions.  Pap's A.M. v. City of Erie, 812

A.2d 591, 599 (Pa. 2002).  Like federal courts,[21] for a case to be actionable or reviewable,

Pennsylvania courts require that an actual claim or controversy must be present at all stages of

the judicial process and that it is remains possible for the court to grant meaningful relief.  See,

e.g., Com., Dept. of Environmental Protection v. Cromwell Twp., Huntingdon County, 32 A.3d

639, 652 (Pa. 2011); Pap's A.M., 812 A.2d at 599-600; Delaware River Preservation Co., Inc. v.

Miskin, 923 A.2d 1177, 1183 n.3 (Pa. Super. Ct. 2007).

Here, the City's waiver of its right to collect the recycling fees that were the subject of the

scire facias proceeding on appeal, accompanied by the satisfaction of the scire facias judgment

and the City's recorded lien, moots the appeal that is pending in the Commonwealth Court, just

as it moots the potential claims litigation in the bankruptcy court, because there is no live legal

---

[20]    I acknowledge the possibility that, at some indeterminate point in the future (if the
Pennsylvania Supreme Court rules a certain way) after the conclusion of the bankruptcy case, see n.19,
supra,, the City might again assess recycling fees against the Debtor's properties, and that this may be
perceived as creating a conflict between the parties sufficient to accord standing to the Debtor and avoid
mootness.  However, I consider this possibly too remote in time and in relation to the bankruptcy
proceeding to justify further litigation at this time.

[21]    The Pennsylvania Supreme Court has stated that it looks to the U.S. Supreme Court for
guidance in deciding questions of mootness.  See Pap's A.M., 812 A.2d at 600.

dispute between the parties; once the City marks its lien and judgment against the Property

satisfied, as it is prepared to do, there is no further relief that can be provided by the

Commonwealth Court.  See generally Mistich v. Com., Pa. Bd. of Probation and Parole, 863

A.2d 116, 119 (Pa. Cmwlth. Ct. 2004) (existence of a case or controversy requires a legal

controversy that is real and not hypothetical and that affects an individual in a concrete

manner).[22]


**4.**

The Debtor offers one (1) final argument in support of his request for relief from the

automatic stay.  He asserts that even though the City is dropping its monetary claims for the

recycling fees, he nonetheless will be prejudiced if he is not permitted to return to state court to

complete a successful appeal in the scire facias proceeding because he has the right to pursue a

statutory claim against the City for wrongful use of civil proceedings, based upon 42 Pa. C.S.

§8351(a) ("the Dragonetti Claim").

---

[22]       Exceptions to the mootness doctrine are made where the conduct complained of is
capable of repetition yet likely to evade review, where the case involves issues important to the public
interest or where a party will suffer some detriment without the court's decision.  E.g., Cromwell Twp.,
32 A.3d at 652.

          The issue whether a municipality's right to assess recycling fees is preempted does not
appear to be capable of repetition but evading review, considering that any property owner in the City
could challenge its assessment.  Nor will the Debtor suffer any legal detriment without a state court
resolution of his appeal.  To the contrary, the City Waiver Offer provides him with the same relief he
would obtain from the Commonwealth Court.  The preemption issue arising in the Debtor's appeal has
public importance that arguably could justify applying that exception to the mootness doctrine.
However, in light of the numerous other vehicles that must exist for presentation of the issue to the
Pennsylvania appellate courts, I consider it more likely that the Commonwealth Court would consider the
matter moot and await its presentation in an appeal involving a live controversy.

Section 8351(a) provides:

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:

> > (1)   He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

> > (2)   The proceedings have terminated in favor of the person against whom they are brought.

The Debtor contends that it must have been obvious to the City, based on two (2) prior Commonwealth Court decisions, that its right to assess recycling fees was preempted.  The Debtor refers to <u>IESI PA Bethlehem Landfill Corp. v. County of Lehigh</u>, 887 A.2d 1289 (Pa. Cmwlth. Ct. 2005), and <u>Pennsylvania Indep. Waste Haulers Assoc. v. County of Northumberland</u>, 885 A.2d 1106 (Pa. Cmwlth. Ct. 2005).  The Debtor further suggests that the institution of the <u>scire facias</u> was motivated by an improper purpose.

The crux of the Debtor's argument for granting relief from the automatic stay is his assumption that if he is unable to obtain a favorable ruling from the Pennsylvania appellate courts in the <u>scire facias</u> proceeding due to the City's voluntary withdrawal of its monetary claim, he will be deprived unfairly of the opportunity to pursue his Dragonetti Claim.

I am unpersuaded by this argument for two (2) reasons.

First, after reviewing the state court briefs and opinions, I agree with the City's contention that a very respectable argument exists that: (1) the prior Commonwealth Court decisions <u>IESI PA Bethlehem Landfill</u> and <u>Pennsylvania Indep. Waste Haulers Assoc.</u> are distinguishable, and (2) as a third class city, the City's right to assess recycling fees is not preempted by the SWMA

and the MWPRWRA.  Indeed, the C.P. Court was so persuaded.  To be clear, I do not mean to

imply that the Commonwealth Court Decision in Iezzi was incorrectly decided.  I express no

opinion on the issue.  My point is only that the City's position, even if it ultimately unsuccessful,

has some legal support and is a reasonable litigation position.  In sum, the City's legal position is

not so anemic as to create any reasonable inference that its initiation of the scire facias

proceeding was for an improper purpose or based on an improper motive.[23]

Second, the Debtor's assumption that the City's waiver of its right to the disputed

recycling fees at this time precludes the filing of the Dragonetti claim is questionable at best.  For

purposes of 42 Pa. C.S. §8351(a), a "favorable termination" does not require an adjudication on

the merits.  It can occur through a voluntary dismissal or abandonment of the underlying

proceeding.  DiLoreto v. Costigan, 600 F. Supp. 2d 671, 689-90 (E.D. Pa. 2009).  "[W]hether a

withdrawal or abandonment constitutes a favorable, final termination of the case against who[m]

the proceedings are brought initially depends on the circumstances under which the proceedings

are withdrawn."  Clausi v. Stuck, 74 A.3d 242, 246 (Pa. Super. Ct. 2013) (quoting D'Elia v.

Folino, 933 A.2d 117, 122 (Pa. Super. Ct. 2007)).

Here, considering the circumstances in which the City made the City Waiver Offer, (i.e.,

---

[23]     An important qualification is in order.  The statement in the text should not be
considered a final finding on the issue of the City's purpose or motive so as to preclude the Debtor from
litigating the issue in any Dragonetti case he might later file.  The Debtor's Motion is a summary
proceeding, in which the bankruptcy court must decide the ongoing scope of the automatic stay.  Stay
relief contested matters "do not involve a full adjudication on the merits of claims, defenses, or
counterclaims...."  In re Sunshine Three Real Estate Corp., 2009 WL 3617798, at *7 (Bankr.D.Mass. Oct.
26, 2009).  Findings made in such contested matters are akin to those made during a preliminary
injunction hearing: that the successful party is more likely than not to prevail on the issue in later,
plenary litigation, see In re Northwest 15th Street Associates, 435 B.R. 288, 304 (Bankr. E.D. Pa. 2010),
and are used to inform the exercise of the court's discretion in determining the scope of the automatic
stay.

after the Commonwealth Court Decision was issued inadvertently in violation of the automatic

stay), it is hard to envision a better case for treating a voluntary withdrawal as a favorable

termination.[24]  Thus, the Debtor's fear that his potential Dragonetti claim will be delayed by

implementation of the City Waiver Offer and denial of his request for relief from the automatic

stay is exaggerated.  Whatever the merits of the potential Dragonetti claim may be, its existence

does not support granting relief from the automatic stay to resume the <u>scire facias</u> litigation in the

Pennsylvania appellate courts.

## IV.  CONCLUSION

From a certain perspective, neither party in this dispute cuts a sympathetic figure.  After

learning that the adverse decision of the Commonwealth Court was void due to a technical

violation of the automatic stay, one could describe the City as cynically seizing the opportunity to

obtain a second bite at the litigation apple by taking steps to moot the Debtor's appeal before the

appellate ruling could be re-entered validly by the Commonwealth Court.  For the Debtor's part,

after receiving the City Waiver Offer, which provided him with finality with respect to all of the

personal relief he could obtain by prevailing on the Commonwealth Court appeal  – and even

more!  –  he rejected the fruits of the City's offer in order to press for the opportunity to obtain

what might be described as nothing more than an abstract legal victory.  (On the other hand, the

Debtor's interest in seeing his state court litigation against the City to a decisive conclusion,

might be characterized as acting selflessly in the public interest.).

---

[24]        Again, this is not a final determination of the issue.  <u>See</u> n.23, <u>supra</u>.

However one chooses to depict the parties, the City prevails in this dispute because the

law highly values dispute resolution and the avoidance of judicial decisionmaking in the absence

of concrete consequences.  Further, the City has done nothing improper in waiving its monetary

rights and ending its litigation with the Debtor.  It has dropped its claims against the Debtor and

there is no active dispute for the parties to litigate.  Whatever legal benefit (or windfall) the City

believes it may obtain by "undoing" the adverse decision announced by the Commonwealth

Court based on a technical violation of the automatic stay, its conduct is neither so disturbing or

inequitable (considering that the dispute in this court arose due to the Debtor's failure to give

ample notice of the bankruptcy filing to the City and the Commonwealth Court), so as to

preclude this court from applying the mootness doctrine in a conventional manner.

For these reasons, I will grant the City's Motion and deny the Debtor's Motion

conditioned on performance of the City Waiver Offer (as modified in n.19, supra).  An order

consistent with this Opinion will be entered.


**Date: January 31, 2014**

_____
**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**

-36-